IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSEPHINE POTUTO, | ) | CASE NO. 4:20CV3003 |
| | ) | |
| Plaintiff, | ) | FIRST AMENDED COMPLAINT |
| | ) | DEMAND FOR JURY |
| Vs. | ) | and CERTIFICATE OF SERVICE |
| | ) | |
| | ) | |
| THE BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF NEBRASKA, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff and for her first amended complaint against the Defendant states and alleges as follows:

1.      This is an action seeking redress for the violations of the statutory and constitutional rights guaranteed to Plaintiff pursuant to Neb. Rev. Stat. §48-1219 *et. seq*., 42 U.S.C. §1983, the Equal Protection Clause, the 1st Amendment of the Constitution of the United States of America, the Equal Pay Act, as amended, Title VII, as amended, and the Nebraska Fair Employment Practices Act.

2.      This Court has original jurisdiction over the federal law claims and concurrent jurisdiction of the state claims.

3.      At all times relevant, the female Plaintiff, Josephine (Jo) Potuto was a resident of Lincoln, Lancaster County, Nebraska.

4.      Pursuant to Neb. Rev. Stat. §48-1223, Plaintiff specifically reserves the right to amend her pleadings following appropriate discovery to include all other similarly situated female employees.

5.      At all times relevant, Defendant was and is a land grant institution of higher education operating within the State of Nebraska and is a public employer. At all times alleged,

1

the Board of Regents employed thousands of University of Nebraska employees at various campuses throughout the State of Nebraska, including, but not limited to the University of Nebraska College of Law. Defendant is an employer as that term is defined by the statues set forth above and is a public employer for purposes of the Equal Protection and 1st Amendment violations.

6.     All the discriminatory and retaliatory acts alleged herein occurred in the State of Nebraska. The discriminatory and retaliatory conduct is a continuing violation of the statutes and constitutional provisions noted herein.

7.     Plaintiff commenced her employment with Defendant as an Assistant Professor at the University of Nebraska College of Law in 1974 and served in this capacity until 1978. From 1978 to 1981, Defendant employed Plaintiff as an Associate Professor of Law until she was promoted to Professor of Law in 1981. In 1988 she was awarded a chair and from that time to currently she is the Richard H. Larson Professor of Constitutional Law at the University of Nebraska College of Law.

8.     Potuto is the most senior member of the Defendant's Law College faculty with continuous tenure, is the most senior female faculty at the Law College and is the most senior female faculty member at UNL.

9.     As more fully described in paragraph 21 below, Plaintiff has received numerous prestigious awards for her academic and professional endeavors. These include, but are not limited to, being named the Chancellor Distinguished Lecturer in 2012 (this award is "the highest recognition Research Council can bestow on an individual faculty member" ), was the recipient of the Outstanding Faculty Member by the University of Nebraska College of Law Alumni Association in 2003; was named Professor of the Year by the Nebraska Law College

Student Bar Association in 1990, and in 1992 she received the Shining Light Award from the Nebraska State Bar Foundation (an award that recognizes the outstanding legal research conducted by a lawyer in Nebraska, whether a practitioner, academician, or a non-practicing lawyer). Plaintiff has authored/co-authored three published books and dozens of academic journal publications and other publications on noteworthy topics. Potuto is a frequent and highly regarded lecturer, speaker, and presenter. At the invitation of legislative committees and commissions, Potuto has offered scholarly testimony on a variety of timely topics.

10.    In 1997, Plaintiff was appointed to her position as the Faculty Athletics Representative (FAR) by the Chancellor of the University of Nebraska at Lincoln after a search committee process that included members of the tenured faculty at UNL as well as the director of athletics. The FAR is a required position under National Collegiate Athletic Association (NCAA) bylaws with oversight responsibility for athletics and also serves in conference governance and on NCAA councils, cabinets, and committees.

11.    NCAA Bylaws 4.02.2 and 6.1.3 state: "A faculty athletic representative is a member of an institution's faculty or administrative staff who is designated by the institution's president or chancellor or other appropriate entity to represent the institution and its faculty in the institution's relationships with the NCAA and its conference(s), if any. A member institution shall designate an individual to serve as faculty athletic representative. The individual shall be a member of the institution's faculty or an administrator who holds faculty rank and shall not hold an administrative or coaching position in the athletics department. Duties of the faculty athletic representative shall be determined by the member institution."

12.     Professor Potuto is also the University of Nebraska's Institutional Representative responsible annually to assure that the University of Nebraska complies with the Big Ten Conference's Governance Standards for Institutional Athletics.

13.     Plaintiff has performed all faculty and FAR duties in an exemplary manner. Professor Potuto has received the Exemplary Service Award from 1A FAR. This award is the highest honor the organization can bestow and has only been awarded to four other individuals. Professor Potuto's work in her capacity as FAR have been widely praised and her FAR work is exceptionally important to the University.

14.     Potuto's outstanding performance of the FAR duties have been critical to NU's athletic programs maintaining good standing with the NCAA. College athletics are highly regulated and extremely profitable activities that require strict compliance with multiple laws, rules and regulations. For the fiscal year ending July 1, 2018, Nebraska's Athletic Department generated $142,223,000 in revenue. Due in great part to Potuto's FAR work and ensuring compliance with the NCAA, NU's athletic programs have continued without interruption.

15.     On or about December 2, 2017, University of Nebraska-Lincoln Chancellor Ronnie Green described the importance of the sport of football to the University, "A successful football program can help boost student enrollment, keep more Nebraska kids in the state and connect alumni and donors to the university. I think that everybody in Nebraska and the university understand the importance of Husker athletics." For over two decades, Potuto's exemplary performance as Defendant's FAR has ensured that Nebraska's football program has complied with NCAA rules and regulations.

16.     Jim Pillen, a member of Defendant's Board of Regents, recognized that athletics play such an important role at the University of Nebraska that the successful candidate hired to

replace Hank Bounds as NU President must have "an appreciation of the value of intercollegiate athletics, especially, UNL Husker athletics." The University of Nebraska athletic department is a source of pride to Nebraskans, because of its athletic success and its "squeaky clean" reputation for compliance with NCAA rules. For over two decades, Potuto has played an integral part of keeping NU's record with the NCAA "squeaky clean."

17. The University of Nebraska College of Law's website touts Professor Potuto's accomplishments as follows:

> "Professor Potuto is the Faculty Athletics Representative (FAR) for the University of Nebraska-Lincoln and is the immediate past president of the 1A Faculty Athletics Representatives. She currently serves on the 1A FAR executive committee. She represents the University on NCAA committees and is a member of the governance groups of the Big Ten Conference. Professor Potuto is the sole FAR serving on the NCAA Interpretations Committee. She served three terms on the NCAA Division I Committee on Infractions (chair 2006 to 2008). She is one of two members of the DI Infractions Committee who worked on an NCAA project to make the NCAA enforcement/infractions processes more accessible to media representatives. Professor Potuto represented the Big 12 Conference on the Division I Management Council and also served on the NCAA Men's Gymnastics Championship Committee and the Region 5 Postgraduate Scholarship Committee. In 2002 she was named Outstanding Faculty Athletics Representative by the All-American Football Foundation. In Summer 2011 she was one of two FARs to participate in the NCAA Division I Presidential Retreat. In April 2011 Professor Potuto gave the keynote address and also was a presenter at the University of Washington's Executive Masters Program, Evans School of Public Affairs. Potuto consults on sports issues and is a regular presenter on panels dealing with sports law issues, including at the National Association of Collegiate Athletic Directors, NCAA Regional Rules Seminars, the Knight Commission on Intercollegiate Athletics, and at, among others, law schools at Maryland, Marquette, LSU, Arizona State, Santa Clara, and Mississippi. Potuto is on the editorial board of the Journal of NCAA Compliance."

Another University of Nebraska publication states that "Professor Potuto is recognized as 'a sports law expert.'" Professor Potuto regularly lectures and consults on sports issues in general and NCAA processes and institutional risk management in particular. She is an expert witness in litigation involving sports issues. At the request of the NCAA, she represented it in testimony before the House Subcommittee on the Constitution regarding due process in NCAA infractions hearings.

18.     Potuto has appeared in media reports in the NY Times, LA Times, USA Today, Washington Post, Wall Street Journal, ESPN, CBSSports.com, the Chronicle of Higher Education, Inside Higher Ed and a multitude of other highly regarded news publications. Potuto has presented to the Knight Commission on Intercollegiate Athletics, the Texas Commission of Higher Education, NCAA regional conferences, law conferences and law firms, the National Association of Collegiate Athletic Directors, the American Football Coaches Association, the National Association of Basketball Coaches, and to universities and law colleges, including the Universities of Istanbul, Washington, Maryland, Louisiana State, Arizona State, Oklahoma, Santa Clara, Baltimore and Mississippi.

19.     Sports Illustrated described Professor Potuto's work on the critical NCAA Infractions Committee as follows:

> Among the individuals judging USC will be Josephine Potuto, a tiny woman with red hair who teaches law at the University of Nebraska…Potuto might be the smallest person in the room, but she will also be the most senior, having served on the committee since 1999. She is the person USC athletic director Mike Garrett, school president Steven Sample, and the others representing the school should fear the most as she is a fierce questioner and unafraid to call out school officials who attempt to massage the truth.

> Each case requires about 20 hours of reading and a complex hearing like USC's can last 12 hours or more. "There are plenty of people who get on the committee and pull the rip cord early because they don't realize the time commitment required," Marsh says.

> Not Potuto. Her longevity and embrace of the work stands out. Followers of the committee say anonymously that if they could grant her a lifetime appointment (members are limited to three, three-year terms) they would, and they predict that she will loom large during the proceedings in Tempe.

Professor's Potuto valuable contributions to the University have been ongoing. An expert in NCAA matters in July 2011 explained why Nebraska would fare well with the NCAA in its investigation of one of the sports teams:

One thing that catches Michael Buckner's attention regarding Nebraska's self-reported violations to the NCAA is the name of the person who prepared the report.

NU staffer Josephine Potuto is a former member of the NCAA Committee on Infractions. Serving in that capacity, she knows how former colleagues think, Buckner said.

"I have appeared before Professor Potuto before, and she is well-known for being detail-oriented and asking probing questions," said Buckner, a former NCAA consultant who also has worked for schools under investigation. "She has a good reputation with the enforcement staff and is respected by members of the committee, so the institution's self-report and self-imposed penalties will be taken seriously by all involved."

Potuto has been NU's faculty athletics representative at the NCAA and conference level since 1997. She served the maximum nine years on the Division I Committee on Infractions - as chairwoman the past two - and still substitutes when a member cannot serve.

Buckner said Wednesday that having access to her in the process "is a great aid for Nebraska."

"[The NCAA enforcement staff] might have to come back and do some verification and make sure everything is all right, but with Professor Potuto's reputation with the NCAA I think they are going to do OK," Buckner said from the Michael L. Buckner Law Firm in Pompano Beach, Fla.

After hearing details of the Huskers' report - and considering Potuto's experience, advice and input - Buckner doesn't forecast any major surprises coming NU's way.

"I see the committee accepting that two-year probation and not adding anything else," he said.

20.     On October 30, 2019, Potuto was awarded the Dr. Barbara Hibner Trailblazer Award by the University of Nebraska-Lincoln.  In announcing the award recipient, Bill Moos, Director of Athletics for the University of Nebraska-Lincoln, said about Potuto:  "There is no one here at the University who has given more time and effort toward the betterment of women's sports than you Jo and it is fitting that you should be the 20th recipient of this prestigious award." Moos went on to describe Potuto's contributions:  "We are so grateful for your support of Husker Athletics through the years.  Since 1997 when you were named our Faculty Athletics

Representative, you have helped ensure that all of our student-athletes are provided with a safe and fair atmosphere in which to compete. Thank you for your endless hours of working with Athletics, UNL Administration and the NCAA so that our athletes have the opportunity to be a Husker and attain their degree all while representing the great state of Nebraska. In addition to serving as our FAR, your presence on campus as a member of our faculty since 1974 and your outstanding leadership and role as a mentor has been particularly important for our female student-athletes."

21. Plaintiff's professional and academic accomplishments, achievements and qualifications are numerous, including, but not limited to the following:

## PROFESSIONAL HISTORY

- Richard H. Larson Professor of Constitutional Law, University of Nebraska College of Law, since 1988; Professor 1981 to 1988; Associate Professor 1978 to 1981; Assistant Professor 1974 to 1978

- Graduate Faculty Fellow, University of Nebraska, since 1985; Member, 1978 to 1985

- Visiting Faculty, University of Oregon Summer Sports Law Institute, 2014, 2016 through present;

- Downing College, Cambridge University, Cambridge England, Summer 2007; Summer 2015 (Plaintiff taught Law and Literature for American law students)

- Visiting Professor of Law – Seton Hall University College of Law, 1994 to 1995; University of Oregon College of Law, Spring Semester, 1991; University of North Carolina College of Law, Fall Semester 1990; Rutgers Law College, Summer 1986; Cardozo College of Law, Summer 1986; University of Arizona College of Law, Spring 1982.

- Assistant Prosecutor, Office of the Essex County Prosecutor, Newark, New Jersey, 1983 to 1984 (on sabbatical from the Nebraska Law College); Special Assistant Prosecutor, Office of the Morris County Prosecutor, Morristown, New Jersey, Summers 1991 to 1993, 1996, 1997. In these positions, Plaintiff handled 15 bench and eight jury trials as well as pretrial and trial motions, wrote numerous trial and appellate briefs, and had oral argument before the federal district court, D.N.J. (habeas petitions and post conviction relief), New Jersey Superior Court, Trial and Appellate Divisions, and the New Jersey Supreme Court and also evaluated, and recommended restructuring of, the Office's operational and personnel policies (prosecutor implemented recommendations).

## HONORS

- 2019-20 Dr. Barbara Hibner Trailblazer.
  Presented "in recognition of outstanding support and generous contributions to Nebraska women's athletics."

\* Exemplary Service Award, 1A FAR (Association of FARs at all NCAA Division universities), September 2018. This is the highest award presented by the 1A FAR. It has been awarded only four times.

- 2012 Chancellor Distinguished Lecturer
  Chancellor Distinguished Lecturer is "highest recognition Research Council can bestow on individual faculty member"; "lectures are high profile public events that celebrate the significant achievements and contributions made by faculty."

- Douglass Society, since 2010
  "Douglass College's highest honor for its most distinguished graduates."

- Cline Williams Research Chair, 2006

- Outstanding Faculty Member, University of Nebraska College of Law Alumni Association, 2003

- Outstanding Faculty Athletics Representative, All-American Football Foundation, 2002

- Shining Light Award, Nebraska State Bar Foundation, 1992
  "The Foundation's Shining Light Award recognizes the outstanding legal research conducted by a lawyer in Nebraska, whether a practitioner, academician, or a non-practicing lawyer."

- Professor of the Year, Nebraska Law College Student Bar Association, 1990

## MEMBERSHIPS BY ELECTION

- American Law Institute (ALI), since 1987
  "The ALI was founded in 1923 . . . to improve the law and the administration of justice in a scholarly and scientific manner. Membership is limited to 4000 judges, lawyers and legal scholars selected based on several factors, including professional achievement, personal character, and demonstrated interest in improving the law."

- Nebraska State Bar Foundation, since 2003
  Fellows are "leaders of the legal profession recognized by colleagues."

## GRANTS AND COMMISSIONS

\* Knight Commission on Intercollegiate Athletics Grant, "What's At Our Core? NCAA Division I Voting Patterns vs. Student-Athlete Well-Being and the Amateurism Principle," (with Clough and Dillon) 2012. Plaintiff was the principal investigator.

\* NCAA Research Grant, 2004 (with O'Hanlon)

Survey of student-athletes at 19 NCAA Division I Football Bowl Subdivision (FBS) Universities.

     \*   Nebraska Unicameral Water Law Study, 1990 (with Harnsberger and Thorson)

       Study was commissioned by the Nebraska Unicameral to analyze the constitutionality of water law transfers.

## MAJOR DRAFTING PROJECTS

- Advisor, National Conference of Commissioners on Uniform State Laws (NCCUSL), Athlete Agents Uniform Act, 1999 to 2000

- Reporter, Nebraska Supreme Court Pattern Criminal Jury Instructions, 1989 to 1991

- Project Director and Reporter, Model Sentencing and Corrections Act, 1975 to 1978

- Editorial Board, Journal of NCAA Compliance (Peer Reviewed, Western Kentucky University), 2016 to 2019

## CONSULTING, ADVISING, EXPERT TESTIMONY

\*   Expert & Fact Witness, McNair v. National Collegiate Athletics Association (Wilkinson Walsh + Eskovitz LLP), January – July 2018

\*   Consultant to Bond, Schoeneck & King Law Firm representing University in major NCAA academic misconduct infractions case, Fall 2014; Spring 2017

\*   Consultant to Furman, Watkins & Krutz Law Firm representing former Mississippi head football coach in NCAA infractions case, 2017

\*   Bull v. Ball State, Southern District Indiana, November 2011

\*   Hambrick Sports Management, LLC, in Hambrick Sports Management, LLC v. Andrew Kim, Dallas County (Texas), October 2009 to June 2010

\*   Expert & Fact Witness Keller v. National Collegiate Athletics Association, Jackson County (Alabama) Court, November 2007

\*   Amicus Brief, Neal v. Bakersfield, 198 F. 3d 763 (9th Cir. 1999)
*Brief was on behalf of seven collegiate coaches associations.*

\*   Consultant, Nebraska State Racing Commission, 1993.  Plaintiff drafted operational rules to govern searches and seizures and administrative hearings.  Plaintiff also served as a hearing officer for the notice and public hearing required before formal adoption of the rules.

## BOOKS (Plaintiff Authored/Co-Authored)

\*   Winning Appeals (1992)

\*   Federal Criminal Jury Instructions (2d ed. 1991) (with Perlman and Saltzburg)

\*   Prisoner Collateral Attacks:  Federal Habeas Corpus sand Section 2255 Motions (1991)

## JOURNAL PUBLICATIONS (Plaintiff Authored/Co-Authored)

\*   College Coaches, College Athletes, and the First Amendment, forthcoming 7 Mississippi Sports L. Rev. (2019)

\*   Swinging at the Facts: How Baseball Informs Legal Argument, 78 LSU, L.Rev. 245 (2018)

\*     Two, Four, Six, Eight; What Can We Now Regulate? The Regulatory Mentality and NCAA Satellite Camps (et al) Quinnipiac L. Rev. (2017)

\*     The Once and Future NCAA and Collegiate Sports, 6 Ariz. State Sports & Ent. L.J. 85 (2016)

\*     Comparing NCAA and Olympic Athlete Eligibility Dispute Resolution Systems in Light of Procedural Fairness and Substantive Justice (with Matt Mitten), 7 Harvard Journal of Sports & Entertainment Law 1 (2016)

\*     Whose Article Is It Anyway?: Student Editors and Law Reviews, 49 Ind. L.Rev. 609 (2016)

\*     The NCAA Student-Athlete Reinstatement Process: Say What?, 63 Buffalo Law Review 297 (2015) (also published in monograph series of the Institute for Higher Education Law and Governance, at http://www.law.uh.edu/ihelg/series.asp)

\*     John Gradwohl: In Loving Memory, 93 Neb. L. Rev.1 (2014)

\*     The Collegiate Mark, The Collegiate Model, and the Treatment of Student-Athletes, 92 Ore. L. Rev. 879 (2014) (with Lyons and Rask)

\*     Musings from an Old FAR, 2 Mississippi Sports Law Review 233 (2013)

\*     The NCAA State Actor Controversy: Much Ado About Nothing, 23 Marquette Sports Law Review 1 (2012)

\*     They Take Classes, Don't They?: Structuring A College Football Post Season, 7 Maryland Journal of Business and Technology Law 311 (2012)

\*     If it Ain't Broke, Don't Fix It: An Examination of the NCAA Division I Infractions Committee's Composition and Decision-Making Process, 89 Nebraska Law Review 101 (2011) (with Parkinson)

\*     The NCAA Rules Adoption, Interpretation, Enforcement, and Infractions Processes: The Laws That Regulate Them and the Nature of Court Review, 12 Vanderbilt Journal of Entertainment and Technology Law 257 (2010)

\*     The Federal Income Tax and Reform of College Athletics: A Response to Professor Colombo and an Independent Critique, 2 Journal of Intercollegiate Sport 233 (2009) (with Lyons)

\*     National Study of Student-Athletes Regarding Their Experiences as College Students, 41 College Student Journal 947 (2007) (with O'Hanlon)

\*     Academic Misconduct, Academic Support Services, and the NCAA, 95 KY.L.J. 447 (2007)

\*     National Study of Student-Athletes Regarding Their Experiences as College Students, www.ncaa.org/library/research/student-athlete_experiences (2006) (with O'Hanlon) (full study, including all subgroups)

\*     A Practitioner's Primer to the Fourth Amendment, 70 Neb. L.Rev. 412 (1991, reprinted in 5 Criminal Practice L. Rev. 75 (1992).

\*     Forum Choice in Constitutional Litigation, 78 Neb.L.Rev. 550 (1991)

\* Interstate Transfers of Water: State Options After *Sporhase*, 70 Neb. L. Rev. 754 (1991) (with Harnsberger and Thorson), republished by the National Agricultural Law Center at http://nationalaglawcenter.org/bibliography/results/index.phtml?keyword=harnsberger&dateStart=00&yearStart=year&dateEnd=00&yearEnd=year&submit=View+Results+%BB

\* The Meaning of Proof Beyond A Reasonable Doubt, 2 Guo Wai Fa Xuwe (now Peking University Law Journal) 32 (1988) (published in Chinese)

\* The Federal Prisoner Collateral Attack: Requiescat in Pace, 1988 B.Y.U. L. Rev. 38

\* Stanley + Ferber = The Constitutional Crime of At-Home Child Pornography Possession, 76 Ky.L.J. 15 (1988)

\* The American Prison, Let's Make It a Factory for Change, 18 Toledo L. Rev. 51 (1987)

\* And Mussolini Had the Trains Running on Time: A Review of The Bad Check Offense and the Law Enforcement Debt Collector, 65 Neb.L.Rev. 242 (1986)

\* Prison Disciplinary Procedures and Judicial Review under the Nebraska Administrative Procedure Act, 61 Neb. L. Rev. 1 (1982)

\* An Operational Plan for Realistic Prison Employment, 1980 Wisc.L.Rev. 291

\* A Model Proposal to Avoid Ex-Offender Employment Discrimination, 41 Ohio State L.J. 77 (1980)

\* The Uniform Law Commissioners' Model Sentencing and Corrections Act: An Overview, 58 Neb. L. Rev. 925 (1979) (with Perlman)

\* The Right of Prisoner Access: Does *Bounds* have Bounds?, 52 Ind. L.J. 207 (1978)

\* New Jersey Electronic Surveillance Act, 26 Rutgers 617 (1973) (student note)

## ADDITONAL PUBLICATIONS (Plaintiff Authored/Co-Authored)

\* D. Covell & S.Walker, Practitioner Perspective, in Managing Intercollegiate Athletics (2d ed.) 196 to 199 (Included among practitioner leaders in collegiate athletics)

\* Why ADs & FARs Are Both Outsiders & Must Work In Unison, Athletics Directors U, (September 12, 2017), http://athleticdirectoru.com/articles/why-ads-faculty-athletic-reps-are-both-outsiders-must-work-in-unison/

\* Academics on Campus, Legal Issues in College Athletics (July 2017)

\* The Alston/NCAA Settlement, JURIST - Academic Commentary (March 8, 2017), http://jurist.org/forum/2017/03/Josephine-Potuto-alston-ncaa.php

\* So What's A FAR? And What's A FAR For?, 11 Sports Litigation Alert 22 (August 22, 2014)

\* Professors Need Not Apply, Inside Higher Ed (May 19, 2014)

\* What the EA Sports Settlement Means for the Keller Plaintiffs, 14 Legal Issues in College Athletics 5 (October 2013)

\* Craig James Would Face Legal Obstacles in Trying to Show Fox Discriminated Against Him, 10 Sports Litigation Alert 19 (October 18, 2013)

* Mission:  Alignment, NCAA News, April 11, 2005 (with Perlman), http://www.ncaa.org/wps/wcm/connect/ncaa/NCAA/NCAA+News/NCAA+News+Online/ 2005/Editorial/Mission_+Alignment+-+4-11-05+NCAA +News? page Design =Printer +Friendly+ NCAA+News+And+Updates

* Women's Legal Rights Handbook, Nebraska Commission on the Status of Women (chapter editor), 2000

* Back to Basics:  Seven Steps to Better Writing, 18 The Docket 4 (1993)

* The Law of Successive Petitions:  If At First You Don't Succeed, Try, Try, Again?, Preview, 1990 to 1991 Term (Issue 4, 12/14/90)

* Update on Search and Seizure, 23 Prosecutor 9 (Fall 1989)

* The At-Home Possession of Child Pornography, Can It Be A Crime?, Preview, 1989 to 1990 Term (Issue 5, 12/15/89)

* Presumptions and the State's Burden to Prove Guilt Beyond a Reasonable Doubt, Preview, 1988 to 1989 Term (Issue 3, 4/28/89)

* Miranda Warnings and Police Statements:  Is the Truth Misleading?, Preview, 1988 to 1989 Term (Issue 13, 4/28/89)

* State Criminal Prosecution and Federal Removal, Preview, 1988 to 1989 Term (Issue 6, 12/16/88)

## SELECTED PRESENTATIONS, LECTURES, SPEECHES AND VIDEO WEBINARS

* "Separation of Powers," League of Women Voters, Lincoln NE (October 3, 2019)

* "The First Amendment and College Athletics," Southeast Association of Law Schools (August 11, 2018)

* "Risk Management:  Are You Prepared?," National Association of Collegiate Directors of Athletics (June 27, 2018)

* "The First Amendment on Campus," UNL Student Body (April 6, 2018)

* "The First Amendment Administered," UNL Student Services Staff and Administrators (March 16, 2018)

* "The First Amendment:  Recent Developments," Nebraska Judges Continuing Legal Education Seminar (February 12, 2018)

* "The First Amendment on the Field," Sports Law Conference, Louisiana State University (January 27, 2017)

* "Baseball and Legal Argument," Sports Law Conference, Louisiana State University (January 27, 2017)

* "NCAA Autonomy Conferences:  Their Jurisdiction and Legislative Initiatives," Joint Law, Business, and Journalism Conference, Arizona State Law College (April 8, 2016)

* "Professional and Intercollegiate Sports in 2015:  Challenges and Opportunities in the Coming Decade," Arizona State Law College (March 12, 2015)

* "The Role of the Faculty Athletic Representative and What Athletics Directors Need to Know," Winthrop Intelligence Google Hangouts Program (November 14, 2014)

* "The Collegiate Model:  Kiss It Goodbye?" Osher Livelong Learning Institute (November 13, 2014)

* "NCAA Structure" Elon Law Review Symposium on Media, Regulatory & Labor Issues in College Sports, Elon Law College (November 6, 2014)

* "Crisis in Collegiate Athletics," Association of Public and Land Grant Universities (Orlando Florida November 4, 2014)

* Panel Presenter, "Resolution of Sports Disputes"; Panel Presenter, "Legal and Business Issues in Collegiate Athletics," National Sports Law Institute (Marquette University Law College (October 17, 2014)

* "The Playbook Has Changed," Chicago Ideas Week (Mayor Rahm Emanuel, chair) (October 14, 2014)

* "Stresses and Observations:  College Athletics 2014 and After," SCI Google Hangouts Program (October 7, 2014)

* "What O'Bannon Means, and What Campuses Need To Do," National Association of College and University Attorneys (Denver, Colorado June 24, 2014)

* "Keller/O'Bannon and Beyond," University of Oregon Symposium, The NCAA in Crisis: The Crossroads of Intercollegiate Sports (April 11, 2014)

* "The NCAA Today:  Identity and Challenges," University of Mississippi Law College (November 8, 2013)

* "The Organizational Structure and 'What For?' of the NCAA," Skadden Arps Law Frim (NYC June 24, 2013)

* "University Oversight and Structures of Control:  A Case Study and Recommendations," Texas Higher Education Law Conference (Dallas, Texas March 26, 2013)

* "What Every Regent Should Know about NCAA Rules," University of Nebraska Board of Regents and President (November 2, 2012)

* "The Why and Why Not of NCAA Punishment," Symposium on the Proper Role of Sports in Higher Education, Santa Clara Law College Ethics and Sports Institute (September 2012).  Plaintiff also participated on a panel on NCAA Enforcement.

* "Disciplinary Issues in College Athletics,"  Panel Respondent to Keynote Speeches on the Proper Role of Sports in Higher Education, Santa Clara Law College Ethics and Sports Institute (September 2012)

* "Faculty Oversight of Athletics," Southeastern Association of Law School (July 20120

* "Citizens and the Fourth Amendment," Osher Livelong Learning Institute (November 2011)

\* "The Parameters and Overall Structure of the United States Constitution," Osher Lifelong Learning Institute (November 2011)

\* Presenter/Panel Participant, "Hot Topics in College Athletics," Marquette University National Sports Law Conference (October 21, 2011)

\* Presenter/Panel Participant, "The Intersection of Sports and Business in Today's Legal Arena," University of Maryland Law College Symposium (October 3, 2011)

\* Project Consultant/Presenter, NCAA Enforcement and Infractions Experience Media Project (2011). Plaintiff consulted on project materials and scope of moot hearing; served as one of two members of Committee on Infractions at moot hearing before NCAA Division I Board of Directors (April 27, 2011) and selected media representatives (May10, 2011), at the 2012 NCAA Convention, and at the 2012 annual meeting of the Faculty Athletic Representatives Association.

\* "Institutional Core Principles and Institutional Control," Executive Masters Program, Evans School of Public Affairs, University of Washington (April 19, 2011)

\* "NCAA Governance," University of Oklahoma Graduate Students and Athletics Interns (February 16, 2011)

\* Panel Participant, "The Death of Amateurism: Implications for Sport and Health," Center for Sport and the Law, University of Baltimore Law School (October 28, 2010)

\* "The Collegiate Model of Amateur Athletics" (with Kaburakis), Joint Conference on the Law and Business of International Sport, University of Istanbul, Turkey (September 2010) The Conference was held in conjunction with the International Basketball Federation (FIBA) World Championships. Plaintiff also reviewed papers submitted for presentation at this Conference.

\* Panel Participant, "Amateurism Compliance, 21st Century, Intellectual Property and Student-Athletes' Rights of Publicity," National Association of Collegiate Directors of Athletics, Anaheim, California (June 21, 2010)

\* "Faculty Campus Role Regarding College Athletics," Coalition on Intercollegiate Athletics, University of Arizona (March 8, 2009)

\* Panel Participant, "Investigations and Violations," Faculty Athletics Representatives Association (FARA) (San Diego, California November 13, 2008)

\* Panel Participant, "Infractions and Penalties," Knight Commission on Intercollegiate Athletics (Washington D.C. June 17, 2008)

\* Panel Participant, Faculty Summit, Knight Commission on Intercollegiate Athletics, National Press Club (Washington D.C. October 15, 2007)

\* "First Amendment Issues in Athletics," Sports Law Scholarship and Teaching Colloquium, Marquette University Law School (September 27, 2007)

\* "NCAA Enforcement and Infractions Processes," Florida International Law College Center for Sports and the Law (March 15, 2007)

\* "Ruminations on Compliance," National Association for Athletics Compliance Directors, University of Minnesota (July 18, 2006)

\* Panel Participant, "NCAA Violations: Self Discovery and Investigations," NCAA Regional Compliance Seminars (May 6, 20, and June 3, 2004)

\* "Title IX and College Athletics," Chancellor's Commission on the Status of Women, UNL (April 13, 2004)

\* "The NCAA and Institutional Control"
Plaintiff has given this presentation to numerous groups including the Osher Lifelong Learning Institute, November 8, 2009; Lincoln Bar Association, March, 2007; the Lincoln Rotary Club, February 8, 2005; and the Nebraska Daily Publishers Association, October 16, 2003.

\* Debate Participant, "Justice Talking – Title IX and College Athletics," National Public Radio, Annenberg Public Policy Center (December 2000)

\* Panel Participant, Josephson's Creating a Community of Character Education Institute, UNL (September   2000)

\* Panel Participant, First Amendment Forum, Nebraska Press Association (April 7, 2000)
The other panelists were Paul Duke, then the moderator of Washington Week in Review, and Lyle Denniston, then the Supreme Court Reporter for the Baltimore Sun.

\* "The Role of A Faculty Athletics Representative," NCAA Regional Seminar (Tampa, Florida May 2000)

\* "Whither FARA?," FARA (New Orleans, Louisiana November 1999)

\* "Constitutional Litigation," Alliance Defense Fund (San Juan Puerto Rico, June 1999)

\* "Winning Constitutional Appeals," Alliance Defense Fund (Cancun Mexico July 2000); (San Juan Puerto Rico June 1999); (Cancun Mexico May 1998)

\* "Challenges of Distance Learning," UNL Chancellor's By-Invitation-Only Conference (May 1995)

\* "Free Speech vs. Sexual Harassment: Common Ground, Not Battleground," UNL Chancellor's Cabinet and all Deans (March 1994)

\* "Future of the Criminal Law," Plenary Session, The Future and The Courts, American Judicature Society and State Justice Institute (San Antonio, Texas 1990)

\* Moderator and Drafter of Discussion Script, Nebraska ETV Discussion Program, Teenagers and Drugs, (Spring 1990)

\* "Search and Seizure," Kansas Prosecutors Association (Lawrence, Kansas June 1990); Nebraska Joint Law Enforcement Coordinating Committee (Kearney, Nebraska May 1990)

\* "State Criminal Jury Instructions," Nebraska State Bar Association (October 1990); Nebraska Defenders Association (February 1990); Nebraska CLE Program (October 1989)

\* "Search and Seizure" (for newly appointed federal district judges), Federal Judicial Center (Washington, D.C. December 1988)

\* Moderator, Nebraska ETV Discussion Program, Affirmative Action (Fall 1986)

* "Habeas Corpus: A Collateral Attack on a Criminal Conviction," United States District Court, D. Neb., Federal Practice Conference (UNL November 1986)

* "Effective Appellate Advocacy," Nevada Bar Association CLE program (Las Vegas and Reno September 1986)

## LEGISLATIVE AND ADMINISTRATIVE HEARING TESTIMONY AND PRESENTATIONS

* Testimony at Constitutionality of School Districts Created Along Racial Lines Hearing, United States Commission on Civil Rights, Omaha, Nebraska, September 2006. Plaintiff was invited by the Commission to provide written and in-person testimony.

* Testimony at Due Process and the NCAA Hearing, House of Representatives Judiciary Committee, Subcommittee on the Constitution, Washington D.C., October 2004. Plaintiff was asked by the NCAA president to represent the NCAA before the Subcommittee.

* Presentation, Title IX Reform, Department of Education Commission on Opportunities in Athletics, Colorado Springs, Colorado, October 22, 2002

* Testimony at Nebraska Athlete Agents Act Hearing, Nebraska Unicameral Judiciary Committee, 2001

* Testimony at Child Witness Testimony (LB 90) Hearing, Nebraska Unicameral Judiciary Committee, February 12, 1987. Plaintiff redrafted LB 90 at the request of the judiciary committee. LB 90 was signed into law in May 1988 (Neb. Rev. Stat. 29-1917). For a full description of its adoption, see Campbell, "LB90 and the Confrontation Clause: The Use of Videotape and In Camera Testimony in Criminal Trials to Accommodate Child Witnesses," 68 Neb. L. Rev. 372 (1989). Plaintiff has on numerous occasions reviewed draft legislation for the committee or individual senators.

* Plaintiff has testified before the Nebraska Unicameral's Judiciary Committee on numerous occasions with regard to criminal law issues as well as issues ranging from the Nebraska judicial nominations process to evidence and procedural matters to the composition and functions of the Nebraska High School Association.

## SERVICE, PROFESSIONAL

* Member, Executive Committee, Association of American Law Schools (AALS) Sports Law Section, 2008 to 2016

* Member, United States District Court, D. Neb., Federal Practice Committee (appointed by Chief Judge), 1980 (inception) to 1997

* Member, United States District Court, D. Neb., Civil Justice Advisory Group (appointed by Chief Judge), 1995 (inception) to 1997

* Master, Van Pelt Inns of Court, 1993 to 1994

* Member, Nebraska Supreme Court Committee on Practice and Procedure, 1985 to 1992

*   Member Association of American Law Schools (AALS) Committee for Academic Freedom and Tenure, 1990 to 1993; Member of Committee Panel to Hear Academic Freedom Complaint filed by faculty member against AALS member law college, 1992

*   UNL Law College Representative to AALS, 1985 to 1998

*   Member, Nebraska Commission on Law Enforcement and Criminal Justice (appointed by Governor) 1993 to1994

*   Member, County Attorney Standards Advisory Council, (appointed and reappointed by three successive Nebraska Governors), 1985 to 1993

*   Member, Lancaster County Justice Council (appointed by County Board), 1985 to 1987

*   Member, Lancaster County Advisory Committee on Corrections (appointed by County Board), 1981 to 1984

*   Member, Board of Directors, Legal Services of Southeast Nebraska, 1977 to 1981

## SEMINARS AND CONFERENCES

### Seminars and Conferences Developed and Administered

*   International Conference on Human Trafficking, UNL, October 2009 and 2010 Plaintiff served on the Conference planning committee that also selected papers for presentations

*   Eighth Circuit Judicial Conferences, July 1987; July 1985

*   Coping With Your Federal Appointment, United States District Court, D. Neb., Federal Practice Conference, UNL, November 1986

*   How to Win Your Case Pre and Post Trial, United States District Court, D. Neb., Federal Practice Conference, UNL, August 1983

### Seminars and Conferences Attended

*   Chancellor's Character Counts Conference, UNL, February 24-26, 2000

*   Public Trust and Confidence in the Courts Project, University of Nebraska Public Policy Center, 1998 to 1999

*   Fellowship to attend 10-day seminar, The Quantitative Method and Advanced Law and Economics for Law Professors, George Mason University Law & Economics Center, Hanover, New Hampshire (Dartmouth College), July 1990

*   Fellowship to attend two-day seminar, Teaching Abstract Reasoning, UNL Teaching and Learning Center, September 1989

*   Fellowship to attend week-long seminar, Professional Ethics, UNL Center for the Teaching and Study of Applied Ethics, May 1988

*   Fellowship to attend three-week N.E.H. Seminar on the Constitution, The Genius of the Constitution, Colorado Springs, Summer 1987

*   Seminar (for law faculty) on Statistics and Social Science Methodology, UNL, Spring 1987

* Fellowship to attend two-week Law and Economics Institute for Law Professors, Emory University Law and Economics Center, Atlanta, Georgia, May 1986

* Fellowship to attend National Institute of Trial Advocacy two-week seminar in trial practice, University of Kansas Law College, May1983


## SERVICE, CAMPUS

### University

* Member, President's Advisory Search Committee to Appoint the UNL Chancellor, 2015 to 2016

* Member, University Special Bioethics Advisory Committee (appointed by the president of the University of Nebraska System), 2000 to 2002

* Nebraska's Representative to the University Advisory Council, Fair Labor Association (FLA), Washington, D.C., June 20, 2000
The FLA is a "nonprofit organization dedicated to ending sweatshop conditions in factories worldwide."

### UNL

* Member, UNL Academic Senate Intercollegiate Athletics Committee, 1997 to present

* Member, UNL Chancellor Search Advisory Committee, 2015-16

* Chair, Academic Senate's Academic Freedom and Tenure Committee to hear Faculty Member's Appeal of Contract Renewal Denial, 2010 to 2011

* Member, UNL Academic Senate, 2009 to 2012

* Member, Interdisciplinary Faculty Committee on Human Trafficking, 2009 to 2011

* Member, Search Committee for Associate to the Chancellor, 2008

* Member, Search Committee for Senior Vice Chancellor for Academic Affairs, 1992

### Law College

* Faculty Advisor, Nebraska Entertainment and Sports Law Association, 2006 to 2015

* Member, Search Committee for Law College Dean, 2009-2010

* Faculty Advisor, Women's Law Caucus, 1989 to 1999

* Faculty Advisor, National Moot Court Team, 1979 to 1983, 1986 to 1988

* Faculty Advisor, Nebraska Law Review, 1980 to 1982, 1985

* Faculty Advisor, National Client Counseling Competition Team, 1974 to 1979

* Selected UNL Law College Committees – Committee to Review Law College Honor Court Procedures, 2019 to present; ABA/AALS Site Certification Committee, 2016 to 2018;

Tenure Standards Review Committee, 2016 to 2017; Faculty Appointments Committee, 1975 to 1979, 1981 to 1983, 1986 to 1989, 1992 to 1994, 1997 to 2006; Curriculum Committee, 1986 to 1990, 1999 to 2000, 2009 to 2010; Grade Appeals Committee, 1998 to 1992, 1996 to 2000; Honor Court, 1993 to 1996, since 2010; Honor Court Prosecutor, 1991 to 1993; Tenured Faculty Special Issue Committee, 1991 to 1994; Tenured Faculty Promotion and Tenure Evaluation Committee 1991 to 1994; Joint Law College-Psychology Department Law-Psychology Committee, 1987 to 1990

## Faculty Athletics Representative (FAR)

*   The FAR is a required position under NCAA bylaws with oversight responsibility for athletics and also serves in conference governance and on NCAA councils, cabinets, and committees.  Plaintiff was appointed to the position in 1997 by James Moeser, then the Chancellor of the University of Nebraska at Lincoln,after a search committee process that included members of the tenured faculty at UNL as well as the director of athletics.

*   Chair, Chancellor's Intercollegiate Athletics Review Committee, since July 2004 Plaintiff has the authority to convene this committee when she believes there is an issue in athletics that must be handled independent of the athletics administration.  Other members of the committee are the university general counsel and the UNL vice chancellor for student affairs.  This Committee was convened to handle an Athletic Department/Nebraska Foundation matter.

*   Chair, Big Ten Conference Joint Council and Faculty Representatives Council, 2016-2017 Plaintiff has served on numerous Big Ten Conference committees and drafted the revised appeals and committee process.

*   Big Ten Conference Representative, Autonomy 5 Convention, 2016; 2017

*   Member, NCAA Special Task Force:  Interface of Infractions and Interpretations, 2018 to present

*   Member, NCAA Interpretations Committee, 2016 to Present

*   Member, NCAA Student-Athlete Affairs Group Advisory Committee, since March 2010

*   Member, Search Committee, NCAA Executive Vice President of Regulatory Affairs, 2014

*   President, Division 1A Faculty Athletics Representatives (1A FAR), 2008 to 2012 Member 1A FAR Board and Executive Committee, 2004 to 2019 Member 1A FAR Steering Committee, 2003 to 2004 NCAA Division 1A (now Division 1 FBS) includes both land grant universities and those that are the flagship research institution in a state's university system.  Their football teams participate in the College Football Playoffs.

*   NCAA Division I Representative, Executive Committee, Faculty Athletics Representatives Association (FARA), 1998 to 2001

*   Invited Participant (one of two FARs), NCAA Presidential Retreat, "Issues Facing College Athletics," August 9-10, 2011

*   Chair, NCAA Division I Committee on Infractions, 2006 to 2008; Vice Chair 2004 to 2006; Member 1999 to 2004

The Infractions Committee hears and decides cases involving institutional culpability for the commission of major NCAA violations by coaches, staff members, student-athletes, and boosters.  The Infractions Committee meets six times annually and typically hears two cases on a hearing weekend.  Members may serve three three-year terms.  Plaintiff now serves as a substitute when a current member is unable to attend a hearing.

* Member, NCAA Post-Graduate Scholarship Committee for Region V, September 2002 to August 2009

* Member, Special NCAA Internal Review Committee (appointed by NCAA President), March 2005 to August 2007

* Member, NCAA Division I Management Council, 2003 to 2007
  *The Management Council was the chief legislative and policy-making arm of the NCAA, subject to the NCAA Board of Directors.  It was sunsetted in 2008 and has been replaced by the Division I Legislative and Leadership Councils.*

  * Member, NCAA Legislative Review Subcommittee, 2003 to 2007

  * Member, NCAA Administrative Review Subcommittee, 2003 to 2004

  * Member, Special NCAA Arbitration Review Committee (appointed by NCAA President), 2005

* Member, NCAA Men's Gymnastics Committee, 2000-04

* Member, NCAA Athletics Site Certification Team, Ohio State University, 2003; University of Maryland, 2001

* NCAA Division I Representative, Executive Committee, FARA, 1998 to 2001

* Chair, Big 12 Conference Council of Faculty Athletics Representatives, 1998-99
  Plaintiff has served on numerous Big 12 Conference committees, including Strategic Planning, Administrative, Budget and Finance, Interpretations.

## EDUCATION

* J.D., Rutgers Law College, 1974 (M.A., Seton Hall University, English Literature; B.A., Douglass College, Journalism)

* Editor-in-Chief, Rutgers Law Review
* Alumni Senior Prize
  "To graduate with most accomplished law college record and most promise in a legal career."

* Captain, Rutgers National Moot Court Team

* Order of the Barrister

## BAR ADMISSIONS

* Supreme Court of the United States;

* Court of Appeals for the Third Circuit;

\*      United States Districts Courts, D. Nebraska, D. New Jersey; Nebraska; New Jersey

\*\*\*\*\*\*\*\*\*

22.      For decades, Defendant has paid female professors substantially less than their male counterparts.  Notwithstanding Plaintiff's stellar qualifications, credentials, experience, skills, abilities, notoriety, awards, honors, and accolades, Professor Potuto is no exception to this unlawful employment practice.

23.      When Plaintiff was hired in 1974, she was a paid a base salary that was substantially less than two males who were hired by Defendant as law professors in approximately 1976 and 1977.  Defendant's discriminatory pay practice has existed for decades and has been exacerbated and compounded as a result of Defendant's continuing discriminatory practices as well as their failure to remedy the known discrimination.

24.      The right to be free from gender-based discrimination was clearly established at the time of the violations set forth herein.

25.      Over several years, the UNL Commission on the Status of Women has investigated and identified for the Chancellor the gender-based pay disparity issue; however, no action has been taken to rectify it.

26.      In the past year, the Commission noted the continuing disparity and recommended concrete action.  Chancellor Green and Donde Plowman, the then Executive Vice Chancellor for Academic Affairs (EVCAA), directed the Deans of the Colleges to devise plans to address the gender pay disparity in their colleges going forward but UNL administrators have yet to implement any plan.   Plaintiff is unaware of any plan under consideration to rectify the backpay portion of the Equal Pay Act (EPA) violations.  Failing to take timely and appropriate action to remedy the ongoing gender-based pay inequity constitutes gender discrimination and retaliation

in violation of Title VII, the EPA, the NE Equal Pay Act and the Nebraska Fair Employment Practices Act.

27.     Richard Moberly, Dean of the College of Law and currently acting EVCAA, specifically identified to Chancellor Green and former EVCAA Plowman that Josephine Potuto is a compelling example of gender pay disparity at the University of Nebraska College of Law.

28.     Throughout the years, Professor Potuto has raised the issue of unequal pay to current and former Deans of the College of Law and current and former high-level UNL administrators.

29.     After her most recent time raising the issue of discriminatory pay to Chancellor Green in September 2019, Plaintiff was subsequently informed that changes would be forthcoming regarding her continued participation with FAR, despite the fact that Plaintiff had successfully performed the FAR duties since 1997.  Within approximately one week of the filing of the instant lawsuit in November 2019, Chancellor Green announced that a new FAR would be hired to replace Plaintiff in January 2020 for an orientation/training period with the position to start on July 1, 2020.  Other Chairs, who have been successful in special service assignments and desired to change the assignment, requested a change.  Plaintiff did not request that she be replaced as FAR.  Plaintiff's FAR performance was exemplary. Upon information and belief, Plaintiff's abrupt and involuntary removal as FAR was due to her continual reports and complaints regarding gender-based pay inequity, the filing of the instant lawsuit and filing charges of discrimination and retaliation with the Nebraska Employment Opportunity Commission and the Equal Employment Opportunity Commission which collectively included allegations of gender discrimination, retaliation as well as violations of the Equal Pay Act, Equal

Protection Clause and 1ˢᵗ Amendment. In early 2020, Defendant hired a less qualified male to replace Plaintiff as FAR. Defendant's conduct is discriminatory and retaliatory.

30. For many years, Defendant has ignored the gender-based pay inequity and has failed and/or otherwise refused to remedy a known illegal situation.

31. The above noted acts and/or omissions were customs, policies, practices, edicts and acts and/or a continuing, widespread and persistent pattern of misconduct and/or discrimination by Defendant that has resulted in a deprivation of Plaintiff's constitutional and statutory rights.

32. All of the aforementioned discriminatory and retaliatory actions noted herein occurred while Defendant's employees and officials were acting in the scope and course of their employment with the Defendant.

33. As a result of the Defendant's actions, Plaintiff has endured compensatory damages as well as lost wages and the value of benefits and will continue to incur these damages into the foreseeable future.

34. Defendant's conduct is willful and liquidated damages are appropriate under state law and punitive damages are appropriate for the federal constitutional violations.

COUNT I

Nebraska Equal Pay Act and Equal Pay Act

Plaintiff incorporates paragraphs 1 through 34 as if fully set forth herein.

35. Due to her gender, the female Plaintiff was paid substantially less than her male counterparts. This conduct is violative of Neb. Rev. Stat. §48-1210 *et. seq..* and the Equal Pay Act, as amended.

36.     As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages, lost wages, the value of job-related benefits and will continue to incur such damages into the foreseeable future.  Plaintiff has also incurred attorney's fees and costs.

37.     Due to Defendant's willful violation of the law, liquidated damages in an amount equal to her lost wages and lost job-related benefits is appropriate.

COUNT II

Equal Protection

Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein.

38.     Defendant has denied the female Plaintiff equal protection under the law in violation of her constitutional rights.  This right was clearly established at the time of the violation and is brought pursuant to 42 U.S.C. §1983.

39.     As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages, lost wages, the value of job-related benefits and will continue to incur such damages into the foreseeable future.  Plaintiff has also incurred attorney's fees and costs.

COUNT III

Retaliation & 1st Amendment

Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

40.     After Plaintiff engaged in one or more protected activities, to-wit:  reporting and/or speaking out on Defendant's long-standing discriminatory pay practices, Defendant informed Plaintiff that they would replace her as Faculty Athletic Representative (FAR).  After filing the instant action (which publicly raised Defendants' unlawful conduct directed towards Plaintiff and numerous other female employees of Defendant and contained other matters of public concern), Plaintiff was involuntary removed as FAR, was replaced by a less qualified

male and Defendant has continued to engage in discriminatory pay practices toward the Plaintiff. Said conduct is violative of Neb. Rev. Stat. §48-1221, the Equal Pay Act, as amended, and the 1st Amendment of the United States Constitution as raised through 42 U.S.C. §1983.

41.     As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages, lost wages, the value of job-related benefits and will continue to incur such damages into the foreseeable future.  Plaintiff has also incurred attorney's fees and costs.

## COUNT IV

### Gender Discrimination- Title VII and NFEPA

Plaintiff incorporates paragraphs 1 through 41 as if fully set forth herein.

42.     Due to her gender, Plaintiff was subjected to adverse terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act, as amended, and the Nebraska Fair Employment Practices Act.

43.     As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages, lost wages, the value of job-related benefits and will continue to incur such damages into the foreseeable future.   Plaintiff has also incurred attorney's fees and costs.

## COUNT V

### Retaliation – Title VII and NFEPA

Plaintiff incorporates paragraphs 1 through 43 as if fully set forth herein.

44.     After engaging in protected activities regarding gender-based discrimination, Defendant retaliated against the Plaintiff in violation of Title VII of the Civil Rights Act, as amended, and the Nebraska Fair Employment Practices Act.

45.     As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages, lost wages, the value of job-related benefits and will continue to incur such damages into the foreseeable future.  Plaintiff has also incurred attorney's fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court assume jurisdiction herein as to all counts alleged herein and grant the following relief:

a.     Declare Defendant's conduct to be violative of the rights of the Plaintiff under the appropriate state or federal law or laws;

b.     Award Plaintiff monetary damages for lost wages and the value of job-related benefits incurred through the date of trial plus pre- and post-judgment interest as well as front pay and the value of future lost job-related benefits;

c.     Award Plaintiff compensatory damages for pain, suffering, inconvenience, humiliation and/or emotional distress in an amount to be determined by the jury or the court;

d.     Award Plaintiff liquidated damages as allowed under law;

e.     Order Defendant to immediately pay to Plaintiff a fair, equal and non-discriminatory wage for the work they performed for Defendant;

f.     Enjoin Defendant from any further discrimination against the Plaintiff;

g.     Enjoin Defendant from retaliating against Plaintiff;

h.     Award Plaintiff reasonable attorney's fees and costs and such other and further relief as the Court deems just, reasonable and appropriate under the circumstances.

BY:     s/Vincent M. Powers
        Bar Number:  15866
        Kathleen M. Neary
        Bar Number:  20212
        Attorney for Plaintiff
        Powers Law

411 South 13th Street, Suite 300
Lincoln, NE 68508
Telephone: (402) 474-8000
Fax: (402) 474-5006
powerslaw@me.com
kathleen@vpowerslaw.com


DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury in Lincoln, Nebraska.

s/Vincent M. Powers
Vincent M. Powers   NSBA 15866


CERTIFICATE OF SERVICE

The undersigned certifies that on this 1st day of June, 2020, the above and foregoing was

filed using the CM/ECF case filing system which sent notice to all counsel of record.

s/Vincent M. Powers
Vincent M. Powers   NSBA 15866