IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSEPHINE POTUTO,<br><br>        Plaintiff,<br><br>vs.<br><br>THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA,<br><br>        Defendant. | 4:20CV3003<br><br>**ORDER** |

      On March 3, 2021, the Court held a telephone conference with the parties regarding a discovery dispute. The Court was able to resolve most of the dispute during the conference. However, the Court was unable to settle the parties' disagreement regarding the sufficiency of Defendant's response to Plaintiff's Interrogatory No. 7. This interrogatory provides: "For years 1976 through the present, please identify all studies and investigations directed, undertaken, or commissioned by UNL or any commission thereof regarding alleged gender-based pay inequities of faculty members. For each investigation identified, please fully describe the results and all remedial actions taken."[1] Defendant claims this interrogatory seeks irrelevant information.

      The Court was also unable to resolve an issue intertwined with Interrogatory No. 7, namely, the parties' disagreement regarding the scope of the upcoming deposition of University of Nebraska Vice Chancellor of Agriculture and Natural Resources Mike Boehm ("Chancellor Boehm"). In approximately 2018, Chancellor Boehm developed a model/methodology to examine pay disparities amongst expansion educators. Chancellor Boehm also used this methodology to examine pay disparities amongst faculty of the Institute of Agriculture and Natural Resources ("IANR"). Defendant contends Chancellor Boehm's deposition should be limited in scope to only include his knowledge regarding the Faculty Compensation Advisory Committee's ("FCAC") collegewide gender equity study of 2019.[2]

      Defendant claims, however, that Chancellor Boehm's methodology for the study of extension educators and IANR faculty did not play a role in the 2019 collegewide pay review.

---

[1] During the telephone call, the time frame of this interrogatory was limited to 2018 to the present.
[2] Chancellor Boehm was a member of the FCAC.

Plaintiff disputes Defendant's contention that Chancellor's Boehm's model was not used collegewide, arguing that Sarah Purcell ("Ms. Purcell"), who was chair of the FCAC in 2019, testified in her deposition that Chancellor's Boehm's model was employed. To resolve the dispute, the parties agreed that the Court should review excerpts of Ms. Purcell's deposition. Therefore, the Court granted the parties leave to submit deposition excerpts for review.

The Court has completed its review of the deposition excerpts and finds Ms. Purcell's testimony indicates the methodology Chancellor Boehm used in reviewing the pay of expansion educators was shared with the FCAC and that Chancellor Boehm made recommendations to the FCAC based upon his study of expansion educators. Ms. Purcell also testified Chancellor Boehm recommended a college by college review and offered his methodology for use in those reviews. However, what remains unclear from Ms. Purcell's testimony is the scope of the actual use of the methodology in the individual college reviews or collegewide study and extent of Chancellor Boehm's involvement with those reviews. Ms. Purcell was surely not involved in every single conversation Chancellor Boehm had regarding his 2018 study and how/if/when the methodology was used. Therefore, these topics need to be explored in Chancellor Boehm's deposition before the Court can determine the appropriate scope of his deposition and the relevance of Interrogatory No. 7.

If, for example, Chancellor Boehm testifies his methodology was not used in other college reviews or any collegewide salary review process and he was not involved in any other reviews, questions and information about his 2018 review of extension educators and IANR faculty are irrelevant. However, if Chancellor Boehm answers these types of questions in the affirmative, the 2018 review of extension educators and IANR faculty becomes relevant to the issues involved in this suit. At that point, a connection would be established between Chancellor Boehm's methodology, the knowledge/insight Chancellor Boehm gained through his 2018 review, and the collegewide and individual college reviews. Given Chancellor Boehm's position in the university system, if he provided guidance (aside from his recommendation that each college be reviewed individually) regarding college reviews based on knowledge he acquired through the 2018 study of extension educators and IANR faculty, information regarding the 2018 review would be relevant to issues of knowledge and willfulness and would need to be disclosed to Plaintiff.

The Court concludes the best way to proceed at this point is for the deposition of Chancellor Boehm to go forward. At the deposition, Plaintiff may question Chancellor Boehm about whether his 2018 study and/or methodology was used in any collegewide or college by college review and, if so, how it was used. Chancellor Boehm may also be questioned about whether he participated or has any knowledge regarding other colleges' reviews and the extent (if any) of his knowledge or involvement in those reviews. If there is testimony indicating Chancellor Boehm's methodology was used for other college reviews or that he was directly involved in other colleges' reviews, information regarding the 2018 study (and potentially any other study from 2018 to present he was involved in) as requested through Interrogatory No. 7 would be relevant and would need to be disclosed. However, if no evidence is developed that Chancellor Boehm's methodology was used in other reviews or that he was directly involved in (or has knowledge of) the actual review of other colleges, the information sought through Interrogatory No. 7 would not be discoverable and the scope of Chancellor Boehm's deposition should be limited as proposed by Defendant.

The Court acknowledges proceeding in this manner may necessitate deposing Chancellor Boehm twice. However, given the issue presented and the need to protect the integrity and purpose of the discovery process, the Court feels this two-step process is appropriate.

Following Chancellor Boehm's deposition, the parties shall carefully review Chancellor Boehm's testimony and thereafter confer regarding the scope of Interrogatory No. 7 and Chancellor Boehm's second deposition. If, keeping the Court's guidance in this Order in mind, the parties cannot reach an agreement following the deposition, they shall contact the Court to request another telephone conference.

**IT IS SO ORDERED.**

Dated this 12th day of April, 2021.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge